## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

COUNTY OF ANGELINA,     §

    §

    Plaintiff,     §

    §

vs.     §

    §

(1)  PURDUE PHARMA L.P.,     §  Case No. 19-cv-3590

(2)  PURDUE PHARMA INC.,     §

(3)  THE PURDUE FREDERICK COMPANY,     §  (Removal from: District Court of

(4)  JOHNSON & JOHNSON     §  Harris County, Case No. 2018-

(5)  JANSSEN PHARMACEUTICALS, INC.     §  87846)

(6)  JANSSEN PHARMACEUTICA, INC. N/K/A     §

      JANSSEN PHARMACEUTICALS, INC.     §

(7)  ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS,     §

      INC. N/K/A JANSSEN PHARMACEUTICALS, INC.     §

(8)  ENDO HEALTH SOLUTIONS INC.,     §

(9)  ENDO PHARMACEUTICALS INC.,     §

(10) ALLERGAN PLC F/K/A ACTAVIS PLC,     §

(11) ACTAVIS, LLC,     §

(12) ACTAVIS PHARMA, INC. F/K/A WATSON     §

      PHARMA, INC.     §

(13) AMERISOURCEBERGEN CORPORATION     §

(14) AMERISOURCEBERGEN DRUG CORP.,     §

(15) PAR PHARMACEUTICAL, INC. D/B/A PAR     §

      PHARMACEUTICAL     §

(16) PAR PHARMACEUTICAL COMPANIES, INC.,     §

(17) MCKESSON CORPORATION,     §

(18) CARDINAL HEALTH, INC.,     §

(19) CVS HEALTH CORPORATION,     §

(20) WALGREEN CO.,     §

(21) WALGREENS BOOTS ALLIANCE, INC.,     §

(22) MORRIS & DICKSON CO., LLC     §

(23) SPECGX LLC,     §

(24) AMNEAL PHARMACEUTICALS LLC     §

(25) AMNEAL PHARMACEUTICALS, INC. F/K/A     §

      ATLAS HOLDINGS, INC.,     §

(26) WAL-MART INC. F/K/A WALMART STORES, INC.     §

(27) DOES 1-100     §

    §

    Defendants.     §

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1442 and 1446, Defendant McKesson Corporation ("McKesson") hereby gives timely notice of the removal of this matter from the District Court of Harris County, Texas to this Court. As grounds for removal, McKesson states as follows:

## I.   NATURE OF THE REMOVED ACTION

1.      On November 14, 2018, Plaintiff Angelina County filed a Petition in the District Court of Angelina County, Texas, against Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.;[1] Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals, Inc., and Does 1 – 100. The case was assigned Case No. CV-00785-18-11. On December 11, 2018, the case was transferred as a tag-along action to the 152nd District Court of Harris County, Texas and consolidated for pre-trial purposes with the MDL styled *In re Texas Opioid Litigation*, Docket No. 2018-63587. The case was assigned MDL Pretrial Cause No. 2018-87846.[2]

2.      On August 23, 2019, Plaintiff filed a First Amended Petition, adding as defendants McKesson Corporation, AmerisourceBergen Corporation, AmerisourceBergen Drug Corporation, and Cardinal Health, Inc. (collectively, "Distributor Defendants"), as well as Allergan plc f/k/a Actavis plc; Actavis, LLC; Actavis Pharma, Inc., f/k/a Watson Pharma, Inc.; Par Pharmaceutical, Inc. d/b/a Par Pharmaceutical; Par Pharmaceutical Companies, Inc.; CVS Health Corporation; Walgreen Co.; Walgreens Boots Alliance, Inc.; Morris & Dickson Co.,

---

[1] The Petition incorrectly identifies Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc. as "Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc."

[2] On December 13, 2018, Defendants Purdue Pharma L.P., Purdue Pharma Inc., and The Purdue Frederick Company Inc. (collectively, "Purdue") removed this action to the Southern District of Texas, on the grounds that there was complete diversity of citizenship between Plaintiff and Defendants, and that the amount in controversy satisfied the jurisdictional minimum. The action was remanded to the District Court of Harris County on February 21, 2019, where it has been pending in the Texas state court MDL. Plaintiff filed the First Amended Petition in the District Court of Harris County.

LLC; SpecGX LLC; Amneal Pharmaceuticals LLC; Amneal Pharmaceuticals, Inc. f/k/a Atlas Holdings, Inc.; Wal-Mart Inc. f/k/a Walmart Stores, Inc.

3.      The First Amended Petition alleges that McKesson, as a distributor of prescription medications, is liable under Texas law for harms to the Plaintiff purportedly caused by McKesson's distributions of prescription opioids to Angelina County. 1st Am. Pet. ¶ 25 ("As a direct and foreseeable consequence of Distributor Defendants' failure to act as the gatekeeper and distributing opioids even though suspicion for diversionary purposes existed, Angelina County has spent and continues to spend large sums of money combatting the public health crisis"); *id.* ¶ 369–70 ("Distributor and Retailer Defendants have breached their duty by failing to prevent or reduce the distribution of opioids even if there existed suspicion for diversionary purposes . . . . As a proximate result, Manufacturing, Distributor, and Retailer Defendants and its agents have caused Angelina County to incur excessive costs to treat the opioid epidemic in its county including, but not limited to, increased costs of social services, health systems, law enforcement, judicial system, and treatment facilities.").

4.      Critically, the allegations in the First Amended Petition put at issue *all* distributions of prescription opioids in the geographic vicinity of Angelina County. *See*, *e.g.*, 1st Am. Pet. ¶ 290 (alleging that "Distributor Defendants knew when there was suspicious opioid prescription activity as they do today" but nonetheless "allowed a flood of opioids to be poured into Angelina County"); *id.* ¶ 236 ("As part of their deceptive marketing scheme, Defendants identified and targeted susceptible prescribers and vulnerable patient populations in the U.S. and *in and around Angelina County*.") (emphasis added); *id.* ¶ 335 (alleging that Distributor and Retailer Defendants knew or should have known that "many" of the opioids prescribed by "doctors *in and around Angelina County*" were "not for a valid medical purpose") (emphasis added).

5.      Furthermore, the First Amended Petition explicitly alleges that the Defendants, including McKesson, caused prescription opioids to be disproportionately prescribed to veterans in and around Angelina County. 1st Am. Pet. ¶ 236–37 ("As part of their deceptive marketing scheme, Defendants identified and targeted susceptible prescribers and vulnerable patient populations in the U.S. and in and around Angelina County . . . . Defendants also targeted vulnerable patient populations like the elderly and veterans, who tend to suffer from chronic pain.").

6.      Moreover, Plaintiff alleges that Distributor Defendants worked with Manufacturer Defendants to increase the total volume of opioids distributed to patients in Angelina County as a whole – allegedly disproportionately targeting veterans through marketing. 1st Am. Pet. ¶ 239–40 (alleging that "veterans . . . are more likely to use anti-anxiety drugs (benzodiazepines) for post-traumatic stress disorder, which interact dangerously with opioids" and that manufacturers used front groups to "target[] these vulnerable populations"); *see also id.* ¶ 21 ("Distributor Defendants function[ed] as 'trusted partners' with Manufacturing Defendants in maximizing market share and success of pharmaceutical products."); *id.* ¶ 24 ("Manufacturing Defendants and Distributor Defendants *worked hand and glove* to glut Angelina County with more opioids than could possibly be consumed for therapeutic purposes") (emphasis added); *id.* ¶ 399 ("Defendants, *in coordinated and concerted action with each other*, engaged in a joint scheme to materially expand opioid use by altering the medical community's prescribing practices of opioids through repeated fraudulent statements and misrepresentations.") (emphasis added). Thus, any portions of the First Amended Petition that make specific allegations about actions taken by the Manufacturer Defendants affect McKesson's potential liability.

7.      McKesson removes this action under 28 U.S.C. § 1442.[3] As set forth more fully below, Plaintiff's allegations against McKesson relate to and necessarily implicate McKesson's distribution of pharmaceuticals to the U.S. Department of Veterans Affairs (the "VA"). McKesson distributes pharmaceuticals, including opioids, to the VA at the direction of a federal officer under an exclusive federal contract. Specifically, McKesson entered into and is bound by an exclusive federal contract called the Pharmaceutical Prime Vendor Contract ("PPV Contract").

**I.      THIS CASE IS REMOVABLE UNDER FEDERAL OFFICER REMOVAL.**

8.      The federal officer removal statute authorizes "any person acting under" a federal officer to remove to federal court a civil action "for or relating to any act under color of such office."  28 U.S.C. § 1442(a)(1).

9.      The federal officer removal statute has long been "liberally construed" in favor of removal and protecting the right of defendants acting under federal officers' authority to a federal forum. *Colorado v. Symes*, 286 U.S. 510, 517 (1932). The Supreme Court has held that "the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (citation and quotation omitted). There has therefore been "a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to

---

[3] The fact that this action was previously removed on diversity grounds and remanded does not preclude McKesson's removal on a different basis here. A defendant may properly remove a case that was remanded on different grounds. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 492 (5th Cir. 1996) ("The Fifth Circuit recognizes a defendant's right to seek subsequent removals after remand . . . . once a case is remanded to state court, a defendant is precluded only from seeking a second removal *on the same ground*.") (citation and quotation omitted). Under 28 U.S.C.A. § 1446 (b), the filing of an amended petition that names McKesson for the first time and levels allegations implicating McKesson's distributions under its PPV contract "constitutes a new paper or event that change[s] the facts regarding the removableness of the case." *S.W.S. Erectors, Inc.* 72 F.3d at 494.

interpret section 1442 broadly in favor of removal." *Durham v. Lockheed Martin Corp*., 445 F.3d 1247, 1252 (9th Cir. 2006).

10.     In a 2011, Congress amended the statute to permit the removal of any state suit "for or relating to any act under color of [federal] office[,]" thus broadening the scope of acts removable under the statute. 28 U.S.C. § 1442(a)(1).  *See Zeringue v. Crane Co.*, 846 F.3d 785, 793 (5th Cir. 2017) ("The plain meaning of the added language broadens the scope of the statute as the ordinary meaning of [relating to] is a broad one—to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.") (citing *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 383 (1992)) (quotations omitted).

11.     Federal officer removal requires a defendant to show "(1) that he is a person within the meaning of the statute; (2) that he acted under the direction of a federal officer; (3) that a causal nexus exists between his actions under color of federal office and the plaintiff's claims; and (4) that he has a colorable federal defense." *St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co.*, 935 F.3d 352, 354 (5th Cir. 2019).

### A.     The Multi-District Opioid Litigation

12.     This action is one of hundreds of related lawsuits asserting claims arising out of the sale, marketing, and distribution of prescription opioids nationwide.

13.     On December 5, 2017, the Judicial Panel on Multidistrict Litigation (JPML) formed a multidistrict litigation (MDL) and transferred opioid-related actions to Judge Dan Aaron Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407. *See* Transfer Order, *In re Nat'l Prescription Opiate Litig.*, 1:17-md-2804 (J.P.M.L. Dec. 5, 2017), ECF No. 328. More than 2,000 opioid-related actions are currently pending in the MDL.

14.     McKesson intends to tag this case immediately for transfer to the MDL.

15.     McKesson has removed other opioid cases from state to federal court on the basis that the complaints necessarily put at issue distributions under the PPV Contract, including both cases relating to McKesson's PPV distributions to the VA and cases relating to McKesson's PPV distributions to the Indian Health Service. On September 4, 2018, in the first opinion issued on the merits of McKesson's removal position, Judge Polster agreed that cases in which Plaintiffs' allegations implicated McKesson's PPV distributions belong in federal court under 28 U.S.C. § 1442(a)(1), and denied motions to remand in two cases brought by Native American tribes alleging nearly identical claims to those at issue here. Op. & Order, *In re Nat'l Prescription Opiate Litig.*, M.D.L. 2804 (N.D. Ohio Sept. 4, 2018), ECF No. 934 (attached hereto as **Exhibit 1**). For the same reasons, federal jurisdiction is appropriate here.

**B.     McKesson Acted Under Color of Federal Office.**

16.     The federal officer removal statute applies to private parties "'who lawfully assist' the federal officer 'in the performance of his official duty.'" *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151 (2007) (citing *Davis v. South Carolina*, 107 U.S. 597, 600 (1883)). It is well-established that government contractors who are involved in "an effort to assist, or help carry out, the duties or tasks of the federal superior" are "acting under" a federal officer. *Id*. at 152 (emphasis and quotations omitted).

17.     Because Plaintiff seeks recovery for harm caused by any and all diverted prescription opioids in and around Angelina County, without regard to the source (*see* 1st Am. Pet. at ¶¶ 236, 290), its claims necessarily implicate prescription opioids that McKesson supplied to federal facilities pursuant to its responsibilities as a government contractor.

18.     McKesson, through an exclusive contract with the United States government, is the primary distributor of prescription medications to the VA. It has supplied and continues to supply prescription medications, including opioids, to the VA in and around Angelina County.

Pursuant to the PPV Contract, McKesson has the obligation to supply prescription medications to VA facilities when they are ordered by the VA through the PPV Contract. In Angelina County, distributions to federal customers under the PPV Contract represent a substantial percentage of McKesson's overall shipments of prescription opioids.

19.     The PPV Contract is governed by federal law and regulation, and is overseen by a federal contracting officer. Under the terms of the PPV Contract, McKesson must process and fill all orders that it receives from authorized government purchasers, *see* PPV Contract § I-9(b). The PPV Contract provides for prompt, typically next-day, delivery of all orders. *Id*. I-9(l). Moreover, the PPV Contract does not grant McKesson discretion to deny any federal orders under the PPV Contract. *Id*. § AS3023 (Sept. 2010) (stating that McKesson "may not unreasonably delay filling an FSS [Federal Supply Schedule] order"). Instead, it must coordinate shipment decisions through the federal contracting officer assigned to administer the contract, who retains close day-to-day supervision over McKesson's fulfillment of federal orders.

20.     Judge Polster recently ruled that this first element of the federal officer removal statute is satisfied by the PPV Contract, because "the assistance McKesson provides to the VA [under the PPV Contract] goes beyond simple compliance and helps the government perform basic tasks." Exhibit 1 at 16. Furthermore, Judge Polster concluded that "McKesson inarguably has a contractual relationship with the government and has retained little, if any, freedom to decide whether to fill orders pursuant to the PPV Contract." *Id.* at 11.

### C.     The Causal Nexus Requirement Is Satisfied.

21.     To establish a causal connection, the alleged conduct needs merely "a connection or association" to establish its relation to the act performed under color of office. *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017) (quotation marks omitted); *Zeringue*, 846 F.3d at 794 (noting that "the plain import of the phrase 'relating to' is that *some* attenuation

897925.1

is permissible, attenuation which is irreconcilable with [a] proposed requirement of precise federal direction").

22.     There is a causal nexus between Plaintiff's claims and McKesson's acts under color of federal office. Plaintiff alleges that the Distributor Defendants "flood[ed] the County with an oversupply of addictive opioid drugs" and "worked hand and glove [with Manufacturing Defendants] to glut Angelina County with more opioids than could possibly be consumed for therapeutic purposes, resulting in an opioid prescription rate in Angelina County that remains well above the already insupportable national rate." 1st Am. Pet. ¶¶ 21, 24.

23.     Plaintiff's claims thus put at issue *all* prescription opioids diverted in and around Angelina County. This necessarily includes prescription opioids McKesson supplied to the VA. McKesson has therefore satisfied the causal nexus requirement. *See* Exhibit 1 at 17 ("[T]he Tribes' claims put *all* prescription opioids at issue and allege that diversion can occur at *any* point in the supply chain, including those opioids supplied pursuant to the PPV contract. The issue here is whether McKesson's drug distribution was performed pursuant to a federal contract, and in this case it was.").

### D.   McKesson Has Colorable Federal Defenses.

24.     In construing the colorable federal defense requirement, the Supreme Court has "rejected a 'narrow, grudging interpretation' of the statute," and "do[es] not require the officer virtually to 'win his case before he can have it removed.'" *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

25.     McKesson has a colorable federal defense in the form of the government contractor defense, which "protects government contractors from tort liability that arises as a result of the contractor's 'compli[ance] with the specifications of a federal government contract.'" *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011) (quoting *In re Hanford Nuclear*

*Reservation Litig.*, 534 F.3d 986, 1000 (9th Cir. 2008)). *See also Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988). In denying remand in two substantially similar opioid-related cases brought by Native American tribes, Judge Polster ruled that "McKesson's distributions to the federal government pursuant to the PPV Contract are sufficient to demonstrate that the government contractor defense is plausible," and therefore this defense is "sufficient to meet the third prong of the federal officer removal analysis." Exhibit 1 at 19.

26.     McKesson also has a defense that Plaintiff lacks standing to pursue its claims, which effectively attempt to challenge McKesson's compliance with the federal Controlled Substances Act, and its implementing regulations. The First Amended Petition seeks to hold McKesson liable at least in part for its alleged failure to halt shipments of suspicious orders. *See, e.g.*, 1st Am. Pet. ¶ 24 (alleging that distributors have a "duty to stop suspicious opioid orders"); *id.* ¶ 397 ("Defendants unlawfully failed to act to prevent diversion and failed to monitor for, report, and prevent suspicious orders of opioids."). To the extent such a duty exists, it exists only under the federal CSA and related Drug Enforcement Administration regulations, which are interpreted to require that distributors either investigate or decline to ship a suspicious order. *Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 212–13 (D.C. Cir. 2017). Plaintiff, therefore, effectively attempts to challenge McKesson's compliance with the CSA and its implementing regulations, but lacks standing to pursue its claim. The CSA does not create a private right of action and thus can be enforced only by federal authorities. *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 903–04 (10th Cir. 2017); *Durr v. Strickland*, 602 F.3d 788, 789 (6th Cir. 2010).

27.     Finally, McKesson also has a colorable federal preemption defense, to the extent that Plaintiff's claims conflict with McKesson's duties under the CSA and its implementing regulations. For example, the First Amended Petition alleges that McKesson and other defendants had "the duty to exercise reasonable care to track and halt any and all suspicious

opioid prescriptions" and "breached its duty by failing to track and halt the overwhelming supply of opioids into Angelina County . . . ." 1st Am. Pet. ¶ 385–86. In the heavily regulated pharmaceutical distribution industry, federal statutes and regulations provide the legal standard and control what constitutes "reasonable care" under most relevant circumstances. To the extent that Plaintiff's theory concerning what conduct is "reasonable" is inconsistent with the standard set forth by the CSA, Plaintiff's claims are preempted. 21 U.S.C. § 903.

## II.   ALL PROCEDURAL REQUIREMENTS OF REMOVAL ARE SATISFIED.

28.    McKesson has not yet been served with the First Amended Petition. Accordingly, the 30-day removal period contemplated by 28 U.S.C. § 1446(b) has not yet begun to run. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354–56 (1999) (30-day removal period begins to run upon service of summons and complaint).

29.    In accordance with 28 U.S.C. § 1446(a) and LR 81, copies of the state court docket sheet and all documents filed or served upon McKesson in the state court action are attached as **Exhibits 3-4**.[4]

30.    Written notice of the filing of this Notice of Removal shall be promptly served on all parties herein, and a copy of this Notice shall promptly be filed with the Clerk of the District Court of Harris County, Texas pursuant to 28 U.S.C. § 1446(d).

31.    Federal officer removal does not require all defendants to consent to join in the removal and effects the removal of the entire action. *Humphries v. Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014) ("Removal under § 1442(a), unlike removal under § 1441, does not require the consent of co-defendants."); *Akin v. Ashland Chemical Co.*, 156 F.3d 1030, 1034 (10th Cir.

---

[4] **Exhibit 3** contains the state court docket and all pleadings filed in the District Court of Angelina County, Texas, where this action was initiated. On December 11, 2018, this case was transferred as a tag-along action to the 152nd District Court of Harris County, Texas and consolidated for pre-trial purposes with the MDL styled *In re Texas Opioid Litigation*, Docket No. 2018-63587. The case was assigned MDL Pretrial Cause No. 2018-87846.[4] **Exhibit 4** contains the state court docket and all pleadings filed in the 152nd District Court of Harris County, where this action is currently pending.

1998) (stating that removal under § 1442 "allows a federal officer [or person acting under that officer] independently to remove a case to federal court even though that officer [or person acting under that officer] is only one of several named defendants").

32.     In filing this Notice, McKesson expressly reserves all defenses, including but not limited to those under Federal Rules of Civil Procedure 8(c) and 12(b).

33.     WHEREFORE, McKesson gives notice that the above action now pending against it in the District Court of Harris County, Texas Case No. 2018-87846, is hereby removed from the above-referenced State Court to the United States District Court for the Southern District of Texas.

897925.1

September 23, 2019

Respectfully submitted,

*/s/ Craig Smyser*

Craig Smyser
Texas Bar No. 18777575
Fed. Bar No. 848
csmyser@skv.com
Tyler G. Doyle
Texas Bar No. 24072075
Fed. Bar No. 1373873
tydoyle@skv.com
David Isaak
Texas Bar No. 24012887
Fed. Bar No. 26694
disaak@skv.com
Razvan Ungureanu
Texas Bar No. 24085630
Fed. Bar No. 2006928
razvan@skv.com
Kristin Adler
Texas Bar No. 793233
Fed. Bar No. 21273
kadler@skv.com
Michelle S. Stratton
Texas Bar No. 24085606
Fed. Bar No. 2592215mstratton@skv.com
Crystal Robles
Texas Bar No. 24083754
Fed. Bar No. 2070295
crobles@skv.com
SMYSER KAPLAN &VESELKA L.L.P.
717 Texas Avenue, Suite 2800
Houston, Texas 77002
Phone: 713-221-2300
Fax: 713-221-2320

*Counsel for McKesson Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2019, a true and correct copy of the above and foregoing was forwarded to all counsel of record via email.

*County of Angelina:*
jsimon@sgptrial.com.com; acarter@sgptrial.com; pdhendersonlaw@aol.com; ddies@dieslaw.com; sparkhurst@dieslaw.com

*Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Allergan Sales, LLC; and Allergan USA Inc.*
wh@wsfirm.com; jennifer.levy@kirkland.com; donna.welch@kirkland.com; rothm@kirkland.com; tknapp@kirkland.com; zac.ciullo@kirkland.com; andrea@wsfirm.com

*AmerisourceBergen Corporation and AmerisourceBergen Drug Corporation*
SMcClure@ReedSmith.com; SPerry@ReedSmith.com; MBernick@ReedSmith.com; RBuchhorn@reedsmith.com; ARollins@ReedSmith.com; SRocchino@reedsmith.com; NHlawatsch@reedsmith.com; LSchack@ReedSmith.com; melissa@gillamsmithlaw.com; james@litzlerlaw.com; AEMCH@jacksonkelly.com

*Cardinal Health, Inc.*
mmengis@bakerlaw.com; mraley@bakerlaw.com; emainigi@wc.com; lheard@wc.com; spyser@wc.com; ahardin@wc.com; EPistilli@wc.com

*Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.*
John.Lombardo@arnoldporter.com; Sean.Morris@arnoldporter.com; hannah.sibiski@arnoldporter.com; Andrew.Bergman@arnoldporter.com

*Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; and Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.*
smcconnico@scottdoug.com; agriffin@scottdoug.com; jcardelus@omm.com; kklorfein@omm.com; jzarrow@omm.com; clifland@omm.com; sbrody@omm.com; acollins@scottdoug.com; agoldberg@scottdoug.com; jellis@scottdoug.com

*Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company Inc. d/b/a The Purdue Frederick Company; Purdue Pharmaceuticals L.P.; Purdue Pharma Manufacturing L.P;, and Purdue Transdermal Technologies L.P.*
noelle.reed@skadden.com; Alston.L.walker@skadden.com; Sara.Roitman@dechert.com; Mark.Cheffo@dechert.com; Hayden.Coleman@dechert.com; Daniel.mayerfeld@skadden.com; Lindsey.Cohan@dechert.com; whitney.wester@skadden.com; chris.halbohn@skadden.com

*CVS Health Corporation*
david.weinstein@wtllaw.com; matthew.coveler@wtllaw.com; amanda.catalani@wtllaw.com

*Walgreen Co., Walgreens Boots Alliance, Inc., Individually and as Successor-in-Interest to Walgreen Co.*
joel.simon@trialattomeytx.com; steve.femelius@trialattomeytx.com

14

897925.1

*Wal-Mart Inc. f/k/a Walmart Stores, Inc.*
ldurfee@jonesday.com; cjlovrien@jonesday.com; sgconway@jonesday.com

/s/   *Craig Smyser*
Craig Smyser